228 N.J. Super. 291 (1988)
549 A.2d 859
MARY LOSCALZO, PLAINTIFF-APPELLANT,
v.
JOSEPH PINI, BUILDING INSPECTOR OF THE BOROUGH OF FAIRVIEW, OSCAR CABRERA AND MARTHA CABRERA, HIS WIFE, DEFENDANTS-RESPONDENTS, AND BOROUGH OF FAIRVIEW, THIRD-PARTY DEFENDANT.
MARY LOSCALZO, PLAINTIFF-APPELLANT,
v.
BOARD OF ADJUSTMENT OF THE BOROUGH OF FAIRVIEW AND OSCAR CABRERA AND MARTHA CABRERA, HIS WIFE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 1988.
Decided October 5, 1988.
*293 Before Judges PETRELLA, SHEBELL and LANDAU.
*294 Frederick L. Bernstein argued the cause for appellant.
James E. Flynn argued the cause for respondents Cabreras (Ruvoldt & Ruvoldt, attorneys; James E. Flynn, on the brief).
Albert H. Birchwale argued the cause for respondent Board of Adjustment of the Borough of Fairview (Basile, Birchwale & Pellino, attorneys; Albert H. Birchwale, on the brief).
Mark Winkler argued the cause for Borough of Fairview (Woodcock & Kingman, attorneys; Mark Winkler, on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
This is an appeal from a judgment of the Law Division in an action in lieu of prerogative writ. A permit was issued by the Borough of Fairview to defendants Oscar and Martha Cabrera for extension of a building according to submitted plans. Construction had commenced when plaintiff Mary Loscalzo filed a verified complaint and obtained an order to show cause with temporary restraints challenging the building official's issuance of the building permit.
While the action was pending, defendants Cabreras filed an application with the Board of Adjustment for variances to permit "addition and alteration" contending that although the building official erred, defendants' reliance on the permit justified the granting of a variance. The Board of Adjustment granted the variances requested. Plaintiff appealed the Board's ruling to the Mayor and Council. A hearing was held before the governing body resulting in the adoption of a resolution reversing the grant of the variances.
Plaintiff filed a second complaint in lieu of prerogative writ challenging the Board's grant of the variances in order to preserve plaintiff's right to challenge the Board's decision in the event the appeal to the Mayor and Council was held to be *295 improper. These two complaints were consolidated by the Law Division.
Plaintiff filed a motion in the Law Division for summary judgment; however, the judge denied plaintiff relief. He agreed that there was no factual dispute and granted summary judgment in favor of defendants. Thereafter, defendants filed formal motions for summary judgment. The judge heard argument and again dismissed plaintiff's complaint. Thereafter, plaintiff, with new counsel, moved for amended findings and a full trial. This motion was dismissed. Plaintiff appeals from these adverse orders.
Defendants' three-story building at 152 Anderson Avenue in Fairview is zoned as B-1 commercial/residential. Defendants seek to utilize the ground floor of their building for their florist business and live in one of two apartments above the store. Prior to their purchase of the building, defendants inquired of the building inspector about expanding the living quarters and the storage area of the existing store. They were informed that such alterations were proper and that they would be issued a permit. On July 1, 1986, defendants were issued a permit by the building inspector, after which they commenced construction.
On August 7, 1986, plaintiff Mary Loscalzo, a resident of the property adjacent to the defendants, filed an action against the building inspector and defendants charging that issuance of the permit violated the zoning ordinance. Plaintiff asserted that despite written notice by her, defendants continued to build. Plaintiff alleged irreparable harm due to the construction and sought to enjoin further construction and to remove the work that had been done.
According to Fairview Zoning Ordinance, Section 15-6.8b, dwelling units on the second and third floors of a mixed commercial/residential building are "conditional uses requiring approval of the planning board." Defendants applied to the Board of Adjustment stating that they were prevented from *296 complying with the zoning ordinance because their "property cannot be commercially utilized as the other surrounding commercial property and these facts constitute exceptional circumstances...." Defendants sought a "special exception" from the ordinance, claiming that "[a]ll other buildings in the surrounding area have substantial lot coverage more or less as the same lot coverage proposed by the applicant. Therefore, said addition by the applicant will be in conformity with the surrounding buildings and neighborhood." Finally, defendants claimed as "special reasons" that they "had already expended close to $200,000 based on the reliance on the building inspector of the Borough of Fairview and the addition is approximately 75% completed."
The B-1 zone required a minimum lot dimension of 5,000 square feet whereas defendants' lot is 2,300 square feet. Defendants sought 75% lot coverage where only 25% was permitted, and although a 10 foot rear yard is required and there must be at least 10 feet on one side of any structure in this zone, defendants proposed to build within 6 feet of the rear property line and 3 feet of the property line on one side of the structure with zero setback on the other side. When purchased, defendants' structure housed a laundromat on the lower level and two apartments above. After expansion, the building was still to have a store and two apartments.
The building inspector testified before the Board of Adjustment that the area surrounding defendants' premises is "basically a mixed area," with buildings generally three stories in height and "the majority of them having a business on the grade level." He stated most have party walls, and the majority of the buildings have lot coverage in excess of 75%. He added that plaintiff's property has 90% lot coverage and is a three or four story building. He testified that the building would pose no problem concerning police or fire access to the surrounding area. The building inspector claimed he had inadvertently utilized an outdated zoning map in issuing the building permit.
*297 Plaintiff opposed the variances because the almost completed addition was depriving her of light and air, and resulting in loss of rent from tenants moving because defendants' building blocked the windows in plaintiff's building. According to plaintiff, she must use her lights constantly, even on a sunny day, and her air flow has been practically extinguished. Plaintiff claimed that emergency vehicles would be denied access to her building because of the lack of any setback on the south side of defendants' property.
Plaintiff presented testimony of a licensed professional planner that defendants' existing dwelling is a "pre-existing non-conforming use" because of its classification under the borough ordinance as a conditional use and therefore the application constitutes "an expansion of a non-conforming use" requiring a variance under section d of N.J.S.A. 40:55D-70. The Board's attorney offered his opinion that "we are not talking about a non-conforming use, we are talking about a non-conforming structure, the expansion of a non-conforming structure. Since it is existing and we are expanding on this, you only need a Hardship Variance [pursuant to section c of N.J.S.A. 40:55D-70], not a Use Variance."
The question also arose as to whether a variance would be needed for parking spaces. Fairview Zoning Ordinance, Section 15-10.14, states:

Building Prohibition; Parking Spaces. No building or premises shall be used nor shall any building be built or erected, nor shall any building be altered so as to expand its usable floor area unless there is provided offstreet parking space in accordance with the following schedule:
....
 Two family dwelling 3 spaces
....
 Retail stores 1 space per 200 square feet of sales
 area.
[Emphasis supplied].
*298 The Board was advised by its attorney that a variance from parking requirements was not required because "usable floor area" only refers to retail purposes, "meaning where the customers congregate," and not for expansion of "personal space." Plaintiff noted that the clear language of the ordinance required provision for parking for this expansion. The Board decided no parking variance was required. It granted the requested variances for lot size and side and rear yard requirements. The Board found:
there would be no substantial detriment to the public good if the variance was granted and further that the applicant would be subjected to undue hardship if they were forced to conform to the ordinance.
In reversing the grant of the variances, the governing body gave the following reasons:
1. The property is located in the B-1 Zone, which zone was created by an amendment of the Zoning Ordinance enacted prior to the Cabreras' purchase of the premises in question.
2. That amendment was adopted in an effort to improve the area along Anderson Avenue by encouraging redevelopment of the land and buildings to provide adequate light, air and parking and to ensure the maintenance of open spaces. The variance approved by this application would have the opposite effect. It would decrease the light and air available to the Loscalzo property by permitting the Cabreras' to extend the existing building to its property line. It would permit the existing building to be extended an additional 47 feet doubling the land use and covering 90% of the lot thereby increasing the usable floor area without providing any off-street parking as required by Section 15:10-1 of the Zoning Ordinance. Indeed, the Board of Adjustment held that no variance for parking was required notwithstanding the clear contrary language of the Parking Ordinance.
3. The number and the extent of variances granted are detrimental to the public good and will substantially impair the intent and purpose of B-1 Zone Amendment, and the Master Plan. There would be no sidelines, the rear yard set back would be six feet at one point, and the variances would permit 65% more coverage than the ordinance allows. The application as submitted and approved constitutes an abandonment of the Zoning Ordinance and Master Plan rather than a variance.
4. The applicant did not establish a hardship. The reason given by the Cabreras' for the increase in overall size of the building was that with the expansion they could increase the amount of business. Further, the Cabreras' knew or should have known what the zoning requirements were at the time they purchased. The variance as granted would create a hardship for the neighbors and citizens by permitting overbuilding on this undersized lot.
*299 Under ordinance section 15-6.8b, defendants' use of their building is classified as a "conditional use." New Jersey's Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 et seq., defines "conditional use" as
a use permitted in a particular zoning district only upon a showing that such use in a specified location will comply with the conditions and standards for the location or operation of such use as contained in the zoning ordinance, and upon the issuance of an authorization therefor by the planning board. [N.J.S.A. 40:55D-3].
The statutory basis for conditional use zoning provisions is N.J.S.A. 40:55D-67, which provides:
a. A zoning ordinance may provide for conditional uses to be granted by the planning board according to definite specifications and standards which shall be clearly set forth with sufficient certainty and definiteness to enable the developer to know their limit and extent. The planning board shall grant or deny an application for a conditional use within 95 days of submission of a complete application by a developer to the administrative officer, or within such further time as may be consented to by the applicant. [Emphasis supplied].
Defendants' application was to expand a conditional use. A conditional use may be viewed as a permitted use in the zone provided all conditions are met. N.J.S.A. 40:55D-3; see Cox, New Jersey Zoning and Land Use Administration, 193-94 (1988). The ordinance, however, fails to set forth any "specifications and standards" which must be met in order to satisfy the criteria of a conditional use. To this extent the ordinance is deficient. See N.J.S.A. 40:55D-67.
While we need not decide whether the application should have been to the Planning Board or the Board of Adjustment, we believe some discussion of the issue is appropriate.
If the variance sought were for a deviation from a duly ordained special standard of a conditional use, N.J.S.A. 40:55D-70d would apply. It provides in relevant part:
The board of adjustment shall have the power to:
....
d. In particular cases and for special reasons, grant a variance to allow departure from regulations pursuant to article 8 of this act, to permit ... (3) deviation from a specification or standard pursuant to section 54 of P.L. *300 1975, c. 291 (C. 40:55D-67) pertaining solely to a conditional use. ... [Emphasis supplied].
Justice Hall, in his concurring opinion in Harvard Ent., Inc. v. Bd. of Adj. of Tp. of Madison, 56 N.J. 362, 369 (1970), made it clear that a plaintiff's request for a variance from the section of the ordinance dealing solely with the standards or conditions of a "special exception" use required a use variance under N.J.S.A. 40:55-39(d), the predecessor to 40:55D-70d. Id. at 369-70. As shown by the statute's amendment in 1984, the Legislature agreed with Justice Hall and codified his reasoning in the "d" variance section.
Jurisdiction lies exclusively with the planning board where the proposed development requires conditional use approval, but if the application also requires "c" type or "hardship" variance relief, the planning board has the power to grant such relief. See Sponsor's Statement to Assembly No. 1169  L. 1984, c. 20, N.J.S.A. 40:55D-70c. The Board of Adjustment did not believe a use type variance was required, and they proceeded to grant a "c" variance, pursuant to either c(1) or c(2).
We need not determine the procedural or jurisdictional issues raised because it is clear that defendants' application falls short of meeting the standards required for either a "c" or "d" variance. To receive a "d" variance where, as here, the use for which a variance is sought is not one that inherently serves the public good, "the applicant must prove and the board must specifically find that the use promotes the general welfare because the proposed site is particularly suitable for the proposed use." Medici v. BPR Co., 107 N.J. 1, 4 (1987). "[T]he statutory special reasons standard can also be addressed by proof of undue hardship, i.e., that the property cannot reasonably be developed with a conforming use." Id. at 4, n. 1.
In determining whether an applicant has established the requisite "special reasons" to grant a variance, only those special reasons which advance the general purposes of zoning, *301 set forth at 40:55D-2, may be considered. See Medici, 107 N.J. at 10, 18; Andrews v. Ocean Twp. Board of Adjustment, 30 N.J. 245, 250-51 (1959). The record indicates that the proposed expanded structure would contravene at least two of the general purposes of MLUL, namely, N.J.S.A. 40:55D-2b, "[t]o secure safety from fire ..." and c, "[t]o provide adequate light, air and open space." That the municipality might obtain a tax advantage if the proposed structure allowed a larger profit for the business, and that the surrounding property values would be enhanced, cannot support the grant of a use variance. See Odabash v. Mayor and Coun. Dumont, 65 N.J. 115, 120 (1974); Degnan v. Monetti, 210 N.J. Super. 174, 183 (App.Div. 1986). Defendants stress and the Board used as a justification for the variance the large number of non-conforming structures in the neighborhood where defendants' building is located. This, however, is not a criterion on which special reasons may be based. See Medici, 107 N.J. at 18-22; Ward v. Scott, 11 N.J. 117, 128 (1952).
Defendants attempted to prove "special reasons" in the form of undue hardship, in connection with a c(1) variance. Under Medici, 107 N.J. at 4, n. 1; at 17, n. 9, proof that the property is not reasonably adapted to a conforming use would satisfy the requirement of special reasons. "[E]conomic inutility" might in certain circumstances be acceptable as a special reason. See generally New Jersey Zoning and Land Use Administration, supra, at 83-86. However, defendants' argument was limited to the proposition that by expanding their structure they would increase the productivity of their business. An applicant's inability to make the most profitable use of the property is not enough to show economic inutility. See Cerdel Constr. Co., Inc. v. East Hanover Tp., 86 N.J. 303, 307 (1981); Charlie Brown of Chatham v. Board of Adjustment, 202 N.J. Super. 312, 329 (App.Div. 1985).
The Board's resolution appears to indicate that it was granting a c(1) variance, based on its conclusion that the "applicant *302 would be subjected to undue hardship if they were forced to conform to the ordinance." We conclude, however, that defendants' application did not warrant the granting of variances under either c(1) or c(2) of N.J.S.A. 40:55D-70 which state:
c. (1) Where: (a) by reason of exceptional narrowness, shallowness or shape of a specific piece of property, or (b) by reason of exceptional topographic conditions or physical features uniquely affecting a specific piece of property, or (c) by reason of an extraordinary and exceptional situation uniquely affecting a specific piece of property or the structures lawfully existing thereon, the strict application of any regulation pursuant to article 8 of this act [40:55D-62 et seq.] would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the developer of such property, grant, upon an application or an appeal relating to such property, a variance from such strict application of such regulation so as to relieve such difficulties or hardship; (2) where in an application or appeal relating to a specific piece of property the purposes of this act would be advanced by a deviation from the zoning ordinance requirements and the benefits of the deviation would substantially outweigh any detriment, grant a variance to allow departure from regulations pursuant to article 8 of this act; provided, however, that no variance from those departures enumerated in subsection d. of this section shall be granted under this subsection; and provided further that the proposed development does not require approval by the planning board of a subdivision, site plan or conditional use, in conjunction with which the planning board has power to review a request for a variance pursuant to subsection 47 a. of this act [40:55D-60]....
Prior to the 1984 amendment to the MLUL, only the traditional "hardship" variance was permitted under subsection c. With the amendment, c(2) was added in order to "broaden the c. variance by adding alternative criteria therefor and to limit the d. variance to major specific types of variances." Sponsor's Statement to Assembly Bill No. 1169, L. 1984, c. 21. See Kaufmann v. Planning Bd. for Warren Tp., 110 N.J. 551, 558-63 (1988).
The hardships referred to in the record are the economic impact upon defendants if the variance is not granted, first because they will not be able to use their property to the full extent the surrounding properties are utilized, and second, because the expansion is nearly complete and substantial sums of money have been expended. These hardships only constitute "personal hardship;" however, as under the provisions of c(1), *303 the hardships must relate to the specific piece of property. "Personal hardship" as distinguished from hardship arising out of the conditions peculiar to the particular piece of property, does not support the granting of a hardship variance under c(1). Irving Isko, et als. v. Planning Bd. of Tp. of Livingston, et als., 51 N.J. 162, 174 (1968). It has been said that
"hardship" which is unrelated to the physical characteristics of the land is not contemplated by the statute. The fact that the applicant stands to lose money already expended on an improvement is also not "hardship" as contemplated by the statute. See e.g. Place v. Bd. of Adjust. of Saddle River, 42 N.J. 324, 331 (1964). The fact that the applicant stands to make less money without a variance than he would with a variance is likewise not "hardship" as contemplated by the statute. See e.g. Trinity Baptist v. Louis Scott Hold., 219 N.J. Super. 490, 499-500 (App.Div. 1987); Hill Homeowners v. Passaic Zon. Bd. of Adj., 129 N.J. Super. 170, 175 (Law Div. 1974), aff'd 134 N.J. Super. 107 (App.Div. 1975). [New Jersey Zoning and Land Use Administration, supra, at 63].
Plaintiff's claims are thus for personal hardship only, and do not constitute a sufficient basis for a c(1) variance. Defendants' application also did not warrant the granting of a c(2) variance. As stated by the Supreme Court in Kaufmann, supra, the c(2) language was added by the Legislature to address "a very narrow band of cases in which the standard would fall somewhere between the traditional standards of `hardship,' on the one hand, and `special reasons,' on the other." 110 N.J. at 560-61. Variances granted under this section, however, must still advance the purposes of the MLUL. Id. at 561. Kaufmann stresses that the c(2) variance is fundamentally different than a c(1) grant, and that a c(2) grant "must be rooted in the purposes of zoning and planning itself and must advance the purposes of the MLUL." Id. at 562.
By definition, then, no c(2) variance should be granted when merely the purposes of the owner will be advanced. The grant of approval must actually benefit the community in that it represents a better zoning alternative for the property. The focus of a c(2) case, then, will be not on the characteristics of the land that, in light of current zoning requirements, create a "hardship" on the owner warranting a relaxation of standards, but on the characteristics of the land that present an opportunity for improved zoning and planning that will benefit the community. [Id. at 563; emphasis in original].
*304 The proofs here demonstrate that the variance was granted to advance the purposes of the owner. There is no support for the proposition that the community will benefit due to improved zoning if the variance is granted.
Pursuant to N.J.S.A. 40:55D-70, the applicant must also be able to establish certain "negative criteria," which the statute describes as follows:
No variance or other relief may be granted under the terms of this section unless such variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance.
Under Medici, the negative criteria must be established by an "enhanced quality of proof and clear and specific findings by the board of adjustment that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance." 107 N.J. at 21. Even in the absence of the Medici "enhanced proof" requirements, which were handed down on June 3, 1987 before the Board of Adjustment's decision, defendants have not sustained their burden on the negative criteria as they must still show that the variance will not be detrimental to the public good or impair the zoning plan. Medici, 107 N.J. at 22, n. 12; Conlon v. Bd. of Public Works, Paterson, 11 N.J. 363, 369 (1953). It is the applicants' burden to prove that the borough's zoning plan will not be substantially impaired. Weiner v. Zoning Bd. of Adjust. of Glassboro, 144 N.J. Super. 509, 516 (App.Div. 1976), certif. den. 73 N.J. 55 (1977). This requires an evaluation of the effect of the proposed variance on the surrounding properties. See Yahnel v. Bd. of Adjust. of Jamesburg, 79 N.J. Super. 509, 519 (App. Div.), certif. den. 41 N.J. 116 (1963).
The governing body found that the variances granted were detrimental to the public good and that they would substantially impair the purposes of the zoning plan. They also found that the "application as submitted and approved constitutes an abandonment of the Zoning Ordinance and Master Plan rather than a variance." We give no weight to these findings for purposes *305 of our decision except to note that the views of that body are amply supported by the record.
The only language in the resolution of the Board of Adjustment which addresses the negative criteria is as follows:
G) The Board determined that many buildings in the immediate area do not meet the zoning requirements of the Borough of Fairview which would include minimum lot dimensions, maximum lot coverage, lack of any side yard, and lack of any rear yard. The Board further determined that the existing structure is equal to the average set back within 100 feet either side of the subject property.
H) The Board determined that there would be no substantial detriment to the public good if the variance was granted and further that the applicant would be subjected to undue hardship if they were forced to conform to the ordinance.
These findings are inadequate. As stated in Medici, 107 N.J. at 23:
a conclusory resolution that merely recites the statutory language will be vulnerable to the contention that the negative criteria have not been adequately established. The board's resolution should contain sufficient findings, based on the proofs submitted, to satisfy a reviewing court that the board has analyzed the master plan and zoning ordinance, and determined that the governing body's prohibition of the proposed use is not incompatible with a grant of the variance.
Even pre-Medici cases held that mere recitals of testimony do not satisfy the Board's statutory responsibility to make findings of fact. See Degnan v. Monetti, 210 N.J. Super. 174 (App.Div. 1986); Parisi v. North Bergen Mun. Port Authority, 206 N.J. Super. 499 (App.Div.), aff'd in part, rev'd in part 105 N.J. 25 (1985). The "negative criteria" as delineated in N.J.S.A. 40:55D-70 has thus not been met.
We conclude that defendants failed to meet their burden of proof so as to entitle them to either "c" or "d" variances. We are also convinced that the Board of Adjustment's interpretation of the parking standard was clearly erroneous.
Defendants urge that they relied in good faith on the building permit that was issued and that the construction which took place should not be removed based on the law of estoppel. We need not consider whether defendants continued at their own peril to alter their building even after plaintiff filed suit or whether the continued construction was reasonably necessary *306 to protect the investment defendants had made to that point as we find no authority to apply estoppel principles.
This is not a situation such as confronted the court in Jantausch v. Borough of Verona, 41 N.J. Super. 89 (Law Div. 1956), aff'd 24 N.J. 326 (1957). There, the building inspector's view of the ordinance was well-founded and reasonable. Here, regardless of the good faith of the building inspector, issuance of the permit was beyond his authority since clearly a conditional use was sought to be expanded. This required no less than planning board approval under the law. The building permit was invalidly issued, without compliance with or authorization of the ordinance, id. at 94, and thus "cannot ground any rights in the applicant." Hilton Acres v. Klein, 35 N.J. 570, 581 (1961).
The judgment of the Law Division is reversed. The matter is remanded for an appropriate remedial order.