244 N.J. Super. 688 (1990)
583 A.2d 406
WHITE CASTLE SYSTEMS, A FOREIGN CORPORATION AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PLANNING BOARD OF THE CITY OF CLIFTON, A BODY POLITIC OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 26, 1990.
Decided December 12, 1990.
*689 Before Judges GAULKIN, HAVEY and SKILLMAN.
John D. Pogorelec, attorney for appellant (John D. Pogorelec on the brief).
Goldman, Carlet, Garrison & Klein, attorneys for respondent (Frank A. Carlet on the brief).
The opinion of the Court was delivered by HAVEY, J.A.D.
Defendant Planning Board of the City of Clifton (Board) appeals from a judgment reversing its denial of plaintiff White Castle Systems' (White Castle) conditional use and site plan applications. The trial judge concluded that denial of the applications was factually unsupported, arbitrary, capricious and unreasonable.
*690 On appeal, the Board's central point is that it had no jurisdiction to consider the applications because White Castle required a variance from the 125-foot lot-width conditional use standard. The trial court refused to consider this argument, concluding that the Board had waived it since it had not been raised as an issue in the pretrial order. Despite the court's finding of waiver, White Castle now concedes that if a variance is required, the Board had no jurisdiction to hear and decide the applications. However, it argues that no minimum lot-width variance is required if lot width is measured at the point at which the proposed building is actually set back from the front lot line. We reject the argument and conclude that White Castle requires a lot-width variance. Hence, it must apply to the zoning board of adjustment for a special reasons variance under N.J.S.A. 40:55D-70d(3) to permit a "deviation from a specification or standard ... pertaining solely to a conditional use[.]" We therefore reverse and remand to the zoning board for further proceedings.
White Castle proposes a fast-food restaurant on a 25,374 square foot lot located at the intersection of Main and Piaget Avenues in Clifton. The plans envision seating for 20 persons as well as a drive-up window. An existing White Castle restaurant across the street from the proposed site, in operation for over 50 years, will be abandoned. Under the city's Code, fast-food restaurants are conditional uses, subject to various bulk requirements including a minimum lot width of 125 feet. The Board's planning consultant determined that White Castle's lot had a lot width of 122 feet, measured at the "building line," which is defined by the city's Code as follows:
Building Line  A line parallel to the front lot line and removed from it by the depth of the required front yard.
At the hearing White Castle produced a variety of experts who testified as to its compliance with the "definite specifications and standards" of the conditional use ordinance. See N.J.S.A. 40:55D-67a. The Board considered reports from its planning and engineering consultants, representatives of the *691 health, police and fire departments, and the testimony of neighbors in opposition to the project. In its resolution denying the applications, the Board concluded in part that: (1) the project is a detriment to the area residents; (2) there are similar uses of land in the area; (3) the project adds to area traffic and safety hazards in the area; (4) the project will not be in accord with the intent and purpose of the master plan and zoning ordinance, and (5) the project will be detrimental to the health, safety and general welfare of the community.
White Castle argues that it satisfies the lot-width requirement because its lot width is 149.92 feet if measured from the actual building setback line as proposed by its plans. In support of its argument, it points to the Code's definition of "lot width" as being "the mean width of a lot measured at right angles to its depth at the building setback line." (Emphasis added).
In construing a municipal ordinance we apply the same rules of construction as are applied when interpreting statutes. AMN, Inc. v. South Brunswick Tp. Rent Leveling Bd., 93 N.J. 518, 524-525, 461 A.2d 1138 (1983). We must adopt an interpretation "consonant with the probable intent of the draftsman `had he anticipated the situation at hand.'" Jersey City Chapter of Property Owner's Ass'n v. City Council, 55 N.J. 86, 101, 259 A.2d 698 (1969), quoting Dvorkin v. Dover Tp., 29 N.J. 303, 315, 148 A.2d 793 (1959). Thus, it is essential that we focus on the purpose for which the ordinance was enacted. L.P. Marron & Co. v. Mahwah Tp., 39 N.J. 74, 80, 187 A.2d 593 (1963).
In adopting its conditional use ordinance, the city's obvious objective was to advance and encourage the purposes of zoning as set forth in the Municipal Land Use Law (MLUL). See N.J.S.A. 40:55D-2. Indeed, from the stringent conditional use standards regulating fast-food restaurants, it is apparent that the city desired a consistent minimum lot width in order to control traffic, promote aesthetics and provide for adequate *692 light, air and open space, see ibid., as well as to preserve uniformity "throughout each district for each class or kind of buildings ... or uses of land[.]" N.J.S.A. 40:55D-62a. These zoning purposes are best satisfied by measuring "lot width" from a definitive point, the "building line" as defined by the city Code.
By measuring "lot width" from the actual building setback line, as White Castle suggests, the evident zoning purposes of the ordinance would be frustrated. Each applicant could vary lot width by fixing the actual setback line of the structure at a place which yields the most favorable width measurement. Such a result would not foster uniformity or advance the purpose of the conditional use ordinance. Further, we note that the city's planning consultant rejected White Castle's interpretation, and measured lot width at the "building line." Generally, we accord due deference to the "contemporaneous and practical" interpretation of an ambiguous regulation given by the administrative officer charged with implementing it. Loveladies Property Owners Ass'n, Inc. v. Raab, 137 N.J. Super. 179, 184, 348 A.2d 540 (App.Div. 1975); see also American Nat'l Red Cross v. Shotmeyer Bros., Inc., 70 N.J. Super. 436, 442, 175 A.2d 646 (App.Div. 1961). Thus, we are convinced that the municipality intended to measure lot width from the "building line," rather than the actual setback line.
Because White Castle does not comply with the conditional use lot-width requirement, it must apply to the zoning board of adjustment for relief. Ordinarily, jurisdiction to grant conditional uses is vested in the planning board. N.J.S.A. 40:55D-67. Also, any variance (except a special reasons variance under N.J.S.A. 40:55D-70d) ancillary to a conditional use application may be granted by the planning board. N.J.S.A. 40:55D-60.
However, as we have stated, since White Castle seeks a deviation from the conditional use standards, relief may be granted only by the zoning board, which has exclusive jurisdiction *693 to grant variances permitting a "deviation from a specification or standard ... pertaining solely to a conditional use[.]" N.J.S.A. 40:55D-70d(3); see Loscalzo v. Pini, 228 N.J. Super. 291, 299-300, 549 A.2d 859 (App.Div. 1988), certif. denied 118 N.J. 216, 570 A.2d 972 (1989).[1] Since the application falls within subsection d of N.J.S.A. 40:55D-70, White Castle must demonstrate "special reasons," consistent with the purposes of zoning and as defined by case law. See Burbridge v. Mine Hill Tp., 117 N.J. 376, 386-387, 568 A.2d 527 (1990); Medici v. BRP Co., 107 N.J. 1, 12-13, 526 A.2d 109 (1987); Kohl v. Mayor and Council of Fair Lawn, 50 N.J. 268, 279-280, 234 A.2d 385 (1967); see also N.J.S.A. 40:55D-2 (delineating the purposes of zoning and the MLUL). Also, relief may be granted under subsection d only by affirmative vote of at least five members of the zoning board. N.J.S.A. 40:55D-70d.
Despite the clarity of the statutory scheme, there may be some confusion when, as here, the "deviation" involves a minor variance from what may be deemed a "bulk" requirement of the ordinance, the lot-width minimum. For example, the Board in its brief focuses on White Castle's failure to show hardship under N.J.S.A. 40:55D-70c. (Emphasis added). However, the legislative will is clear. Unlike the prior statute, N.J.S.A. 40:55-39b (now repealed), which did not define "special exception" (the predecessor to the conditional use), the MLUL narrowly defines conditional use:
"Conditional use" means a use permitted in a particular zoning district only upon a showing that such use in a specified location will comply with the conditions and standards for the location or operation of such use as contained in the zoning ordinance, and upon the issuance of an authorization therefor by the planning board.
N.J.S.A. 40:55D-3 (emphasis added). Thus, an applicant's entitlement to conditional use relief is dependent upon satisfaction *694 of all of the objective conditional use standards for suitability. If all of the standards are not met, the presumed suitability of the site for the proposed conditional use within the district no longer exists. Hence, without full compliance, the proposed use must be considered as any other use not expressly permitted within the zoning district. Therefore, a special reasons variance is required.
As well as proving special reasons, White Castle must also satisfy the negative criteria under N.J.S.A. 40:55D-70; that is, that the variance can be granted "without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." This feature of the variance procedure is in dramatic contrast to the conditional use mechanism, which does not require satisfaction of the negative criteria. See N.J.S.A. 40:55D-67.[2] By placing applications for deviations from conditions "pertaining solely" to conditional uses under subsection d of N.J.S.A. 40:55D-70, the Legislature obviously intended that, as in any special reasons variance, the nonpermitted status of the proposed use requires the "enhanced proof and specific findings regarding the negative criteria" under N.J.S.A. 40:55D-70. Medici, supra, 107 N.J. at 22, 526 A.2d 109.
Finally, White Castle's site plan application must also be considered by the zoning board, since it is ancillary to its special reasons variance application. See N.J.S.A. 40:55D-76b.
Reversed and remanded to the zoning board of adjustment for further proceedings consistent with this opinion.
NOTES
[1] If the lot-width requirement had been under the general zoning ordinance, rather than the conditional use ordinance, the Board would have had the power to grant a "hardship" variance as ancillary to White Castle's conditional use application. Loscalzo, supra, 228 N.J. Super. at 300, 549 A.2d 859.
[2] The "special exception," under N.J.S.A. 40:55-39b, now repealed, did contain the statutory negative criteria. See also Urban Farms, Inc. v. Franklin Lakes, 179 N.J. Super. 203, 209-210, n. 3, 431 A.2d 163 (App.Div.), certif. denied 87 N.J. 428, 434 A.2d 1099 (1981).