711 A.2d 419

ATLANTIC CONTAINER, INC., A NEW JERSEY CORPORATION, PLAINTIFF, v. TOWNSHIP OF EAGLESWOOD PLANNING BOARD, A MUNICIPAL PUBLIC AGENCY, DEFENDANT, AND CONCERNED CITIZENS FOR A QUALITY COMMUNITY, IN-TERVENOR.

Superior Court of New Jersey
Law Division
Ocean County

Decided December 8, 1997.

214

*Thomas P. Butz* for plaintiff (*Schuman, Butz & Babcock, P.C.*, attorneys).

*Russell P. Cherkos* for defendant (*Cherkos & Roe*, attorneys).

*Robert J. Cirafesi* for intervenor (*Wilentz, Goldman & Spitzer*, attorneys).

SERPENTELLI, A.J.S.C.

In this Action in Lieu of Prerogative Writs, the court is required to engage in legislative interpretation to determine whether a variance is needed to build a material recovery facility. Plaintiff Atlantic Container, Inc. (hereinafter Atlantic) applied to the Township of Eagleswood Planning Board (hereinafter Board), a consolidated Board created pursuant to *N.J.S.A.* 40:55D-25(c), seeking

preliminary and final major site plan approval, design waivers and variances to construct what plaintiff characterized as a material recovery facility and ancillary uses. The property, known as Lot 9, Block 38 on the Tax Map, is located in a Limited Manufacturing Zone and is governed by the provisions of Section 103–12 of the Eagleswood Township Zoning Ordinance.

A hearing was held on the application on April 3, 1996, at which time it was decided that the proceeding would be limited to the question of interpretation of the ordinance for the purpose of determining whether the proposed use was permitted.

At the conclusion of the hearing, the majority of the Board determined that the use was not permitted in the zone. A resolution memorializing that decision was adopted on June 5, 1996. Atlantic thereafter filed this action on July 11, 1996. The defendant-intervenor Concerned Citizens For A Quality Community joined the action by a consent order dated September 25, 1996.

All parties concur that this appeal is not subject to the traditional standard of review which seeks to determine whether the Board's decision was arbitrary, capricious or unreasonable and which provides the Board with a presumption of validity for its actions. Instead, it is agreed that interpretation of a zoning ordinance is a purely legal determination not entitled to such a presumption. Legislative construction is a judicial function and not a matter of administrative expertise. The court is not bound to give deference to the Board's decision in this area. *Cherney v. Zoning Board of Adjustment*, 221 *N.J.Super.* 141, 144–45, 534 *A.*2d 41 (App.Div.1987); *Grancagnola v. Verona Planning Board*, 221 *N.J.Super.* 71, 75–76, 533 *A.*2d 982 (App.Div.1987); *Jantausch v. Borough of Verona*, 41 *N.J.Super.* 89, 96, 124 *A.*2d 14 (Law Div.1956), *aff'd* 24 *N.J.* 326, 131 *A.*2d 881 (1957).

The broad principles of law governing interpretations of zoning ordinances are not in dispute. Generally, they are the same as those doctrines governing interpretation of other legislation. *AMN, Inc. v. South Brunswick Tp. Rent Leveling Board*, 93

*N.J.* 518, 524–25, 461 *A.*2d 1138 (1983). Primary regard must be given to the fundamental purpose for which the legislation was enacted, the sense of the laws to be gathered from its object, the nature of its subject matter, the context of its setting, the history of the legislation and the reading of other statutes in *pari materia. Caputo v. The Best Foods,* 17 *N.J.* 259, 263–65, 111 *A.*2d 261 (1955); *Clifton v. Passaic County Board of Taxation,* 28 *N.J.* 411, 421, 147 *A.*2d 1 (1958).

Zoning ordinances are to be liberally construed in favor of the municipality. *Terner v. Spyco, Inc.,* 226 *N.J.Super.* 532, 539, 545 *A.*2d 192 (App.Div.1988). An effort should be made to discover the local legislative intent as contained within the language used. *White Castle v. Clifton Planning Board,* 244 *N.J.Super.* 688, 691–92, 583 *A.*2d 406 (App.Div.1990), *cert. den.,* 126 *N.J.* 320, 598 *A.*2d 880 (1991).

Where a literal reading will lead to a result not in accord with the essential purpose and design of the ordinance, the spirit of the act will control over the letter. *N.J. Builders, Owners and Managers Association v. Blair,* 60 *N.J.* 330, 338, 288 *A.*2d 855 (1972). Furthermore, where the drafters of the ordinance did not expressly contemplate a specific situation, the court should interpret the enactment consistent with the probable intent of the drafters had the situation been anticipated. *Matlack v. Burlington Cty. Bd. Of Chosen Freeholders,* 194 *N.J.Super.* 359, 361, 476 *A.*2d 1262 (App.Div.1984), *cert. den.,* 99 *N.J.* 191, 491 *A.*2d 693 (1984). In short, the interpretation given the ordinance should rely upon the common sense of the situation. *Jersey City Chapter of Property Owner's v. City Council,* 55 *N.J.* 86, 100, 259 *A.*2d 698 (1969). The ordinance should not be construed so as to achieve an absurd result. *State v. Gill,* 47 *N.J.* 441, 444, 221 *A.*2d 521 (1966) *(citing Robson v. Rodriquez,* 26 *N.J.* 517, 528, 141 *A.*2d 1 (1958)).

As the Court said in *Wright v. Vogt,* 7 *N.J.* 1, 6, 80 *A.*2d 108 (1951):

The inquiry in the final analysis is the true intention of the law; and, in the quest for the intention, the letter gives way to the obvious reason and spirit of the expression. It is the settled rule that the construction may be enlarged or restrained according to the evident sense of the lawgiver. The words used, even in an exception, may be expanded or limited to effectuate the manifest reason and obvious purpose of the law. The spirit of the legislative act will prevail over the literal sense of terms. [citation omitted] The intention is taken or presumed according to what is consonant to reason and good discretion. [citation omitted] The particular words are to be made responsive to the reason of the enactment.... That which is reasonably implied is as much a part of the ordinance as that which is expressed. [citations omitted]

 Finally, the title of the section of the ordinance is not controlling. If permitted uses were defined merely by the title of the zone, the specific listing of uses within the ordinance would be unnecessary. In matters of interpretation, titles are never dispositive. At best they are some evidence of intent. A title cannot control the plain words of an enactment. *Atlantic City v. Atlantic County,* 193 *N.J.Super.* 583, 586, 475 *A.*2d 616 (App.Div.1984). It has been said that a title in a statute or ordinance "like the inscription on a tombstone, serves only to indicate what lies below." *State v. Greene,* 33 *N.J.Super.* 497, 500, 111 *A.*2d 65 (App.Div.1955). Therefore, the question in this case is not whether the plaintiff's use' is " limited manufacturing" but rather whether it is among the uses either specifically permitted, intended to be permitted or specifically excluded by the ordinance.

At the hearing on April 3, 1996, Michael McClellan, president and principal shareholder in the plaintiff corporation, testified as to the nature of the proposed facility and its operation. McClellan stated that construction debris containers would be brought into the warehouse facility and that the debris, consisting primarily of concrete, wood, roofing shingles and metal, would be dumped onto a concrete floor. The material would be sorted manually within the facility and put into separate containers. The reusable material would be taken to a recycling center or sold to a third party. The remainder would be taken to a dump.

Much of the hearing was consumed with discussion of a prior application, known as the "Kummings" case, which was decided by a predecessor Zoning Board. In that matter, the Board found

that a process which converted tree stumps to wood chips or mulch was a permitted use in the Limited Manufacturing Zone since it constituted a use similar to and not inconsistent with the uses expressly permitted in the zone.

Section 103–12(A)(1–9) lists the permitted uses in the Limited Manufacturing Zone as follows:

1. Manufacturing of light machinery, comprising any of the following: small machines or machine parts, cash registers, sewing machines and typewriters, calculators and other office machines.

2. Fabrication of metal products, comprising but not limited to any of the following: baby carriages, bicycles and other vehicles, metal foil, tin, aluminum, gold, etc., metal furniture, musical instruments, sheet metal products and toys.

3. Fabrication of paper products, comprising any of the following: bags, bookbinding, boxes and packaging materials, office supplies and toys.

4. Fabrication of wood products, comprising but not limited to any of the following: boats, cabinets and woodworking, furniture and toys.

5. Food and associated industries, comprising any of the following: bakeries, bottling of food and beverages, food and cereal mixing and milling, food processing, sundry food manufacturing, ice cream manufacturing and manufacturing of spirituous liquor.

6. Laboratories, comprising any of the following: biological, chemical, dental, electronic and pharmaceutical.

7. Other permissible industry, comprising any of the following: brush and broom manufacturing, electric light and power and other utility company installations, electronic products manufacturing, farm machinery, sales and service, jewelry manufacturing, commercial laundering and cleaning plants, leather goods manufacturing (except curing, tanning and finishing of hides), pharmaceutical products, photo-finishing, pottery and ceramic products manufacturing, printing plants, sporting goods manufacturing and thread and yarn manufacturing.

8. Any industrial use similar and not inconsistent with the above-listed uses.

9. Industrial parks containing any of the above uses.

Section 103–12(E)(10) lists specific uses prohibited in the zone. The use in question is not prohibited expressly by that section. There was discussion at the hearing concerning the prohibition of a "rubber treatment or reclaiming plant" as contained within Section 103–12(E)(10)(r). However, the Board's attorney ruled that the apparent intent of those words was not to preclude any reclamation plant but rather to prohibit a rubber treatment or *rubber* reclaiming plant. The court concurs that is the apparent intent of the ordinance.

The resolution adopted on June 5, 1996 included the following findings.

6. The Board finds that Section 103–12a(1)–(9) are the permitted principal uses within the zone and that Section 103–12(8) also permits any industrial use not inconsistent with the above listed uses.

7. The Board finds that all listed uses involve a process of manufacturing or fabrication by which some external process is applied to raw materials with the result different in form or character than that originally in existence. The Board, finds that manufacturing in the sense that the term is used was the thrust of the intended use within this particular zone and that the Applicants' proposal is not a manufacturing process but simply a transfer station for disposal of solid waste.

8. The Board, therefore, finds that this proposed use is not industrial in character and is not substantially similar to the uses listed within the ordinance and that it is inconsistent with the uses listed within the ordinance.

9. The Board finds that it was not the intention of the drafters of the ordinance to permit solid waste disposal facilities or transfer facilities and that the use is therefore not permitted, and the use is also prohibited by Section 103–12–E(10)(r) as a Reclaiming Plant' [1]

10. The Board further reviewed A–1 and A–2 and had an argument from the applicant concerning the consistency of the proposed use with the "Kummings" application which was determined to be permitted use within the zone by the Zoning Board of Adjustment. The Board finds that the "Kummings" application included a manufacturing process whereby materials were converted from stumps to a usable product, namely mulch or woodchips and, therefore, the proposed use found to be permitted in the "Cummings" application, is not the same use proposed in this application.

The court's analysis of this matter started with a review of the entire zoning ordinance. The purpose of the inspection was to ascertain whether other provisions outside of the specific zone restrictions would give the court any guidance in the interpretation of the requirements in dispute. Unfortunately, no legislative intent regarding Section 103 can be gleaned from the balance of the ordinance. Indeed, the regulations for the three residential zones and four non-residential zones are internally inconsistent in some cases. For example, the provision in Section 103 which allows for uses "similar and not inconsistent with" other uses in the zone is not uniformly contained within each of the other zone

---

[1] As previously mentioned, the Board's attorney found at the hearing that the reference to a "reclaiming plant" applied to a rubber reclaiming plant. Therefore, this finding in the resolution appears to contradict counsel's ruling.

restrictions. Of course, there is no mandate that such a provision be contained in all of the zoning district regulations, but there is also no evident reason why it was included in some and not in others.

Furthermore, the general regulations of the ordinance and definitions sections do not shed any light on the controversy. Thus, the court is left to divine legislative intent in the absence of any legislative history or portions of the ordinance which could have been read in *pari materia.*

Perhaps the greatest indication of legislative intent is contained within Section 103–12(A)(8), in the omnibus clause which permits "any industrial use similar and not inconsistent with the above-listed uses." It is to be noted that the language of that sentence uses the term "industrial" rather than "limited manufacturing". Subsection 9 follows which permits industrial parks containing any of the enumerated permitted uses within Section 103–12.

When the court reads each of the permitted uses in the zone, it is apparent that a number of them do not fit precisely into the category of "manufacturing" as the Board defined that term in its seventh finding in the Resolution. Thus, for example, the provision for laboratories, electric and power utility installations, farm machinery or perhaps farm machinery sales and service,[2] and commercial laundry and cleaning plants would not conform to the defendant's argument that all of the uses were limited to some processing of materials which resulted in a form or character different from that which was originally in existence.

However, all of the enumerated uses would fit into the general category of an industrial use. Thus, Section 103–12(A)(8) seems to disclose an intent to permit industrial uses as specified along

---

[2] The ordinance is not clear whether it intends to permit the manufacture of farm machinery and its sales and service or just sales and service. The confusion is caused by a comma preceding "sales and service." Read literally it would permit all sales and service of anything but it is more likely the ordinance intended to permit the sales and service of farm machinery.

with uses similar thereto. In short, the court believes that the intention of the draftsmen was to create what is commonly known as a "light industrial zone".

As has been mentioned earlier, the title of the ordinance cannot be given undue weight. Indeed, the title should be made to conform to the true intent of the scriveners. In fact, the court has no way of knowing if, in the codification of the ordinances, those employed to perform that task may have chosen to create that title. In any event, the manner in which the title was chosen is not determinative. It is the substance of the ordinance which should dictate the appropriateness of the title.

It is also to be kept in mind that our cases hold that where the drafters of the ordinance did not expressly contemplate a specific use, the court should make every effort to determine what the intent of the drafters would have been had that use been anticipated. In truth, the court cannot ascertain whether the ordinance in question was prepared in detail by the persons who ultimately adopted it, or whether it was the product of a planner or other person who submitted it to the governing body for adoption. Whether the governing body actually was aware of each and every use permitted in the zone is something no one will ever know. However, the governing body is bound by the terms of its own ordinance and the intent that it displays.

When viewed in this light, the court disagrees with the sixth finding of the resolution. It appears that the proposed reclamation use *is* similar to and not inconsistent with the uses permitted in the zone. It also would be appropriate to characterize it as an "industrial use" given many of the other uses allowed in the zone. Several of them involve activities which could create more objectionable results than the mere separating of construction materials or other similar substances. Thus, some of the fabrication processes could involve as much as or more noise, fumes, emissions and traffic than the plaintiff's proposed facility.

Plaintiff's use is a relatively innocuous and quiescent operation. All of the recycling activity will occur within a building. The material will be sorted on a concrete floor so that there is little danger of fluids leaching into the ground. There was no evidence presented that any pollutants would become airborne. No one suggested that any substantial noise would emanate from the facility, which is supported by the testimony that the sorting will be done by hand. While there will be truck traffic, as noted, there is no reason to believe that it will be any greater than that produced by many of the specifically authorized activities. The use is entirely consistent with the other industrial activities permitted in the zone.

Brief reference should be made to the other resolution findings which were previously quoted. The Board's seventh finding that the plaintiff's application was simply a transfer station for the disposal of solid waste and is, therefore, not a permitted manufacturing process, begs the question. Our law requires that the Board's resolution must contain specific findings of fact which support its conclusion. *Harrington Glen, Inc. v. Board of Adjustment of Leonia,* 52 *N.J.* 22, 27–28, 243 *A.*2d 233 (1968). However, the Board provided no explanation for what is simply a net conclusion. Similarly, the eighth finding does not explain why the Board found that the use was neither industrial nor substantially similar to the permitted uses. Furthermore, while the omnibus clause for similar uses utilizes the term "industrial", not "manufacturing", the thrust of the Board's denial is that the proposed facility was not a similar *manufacturing* use.[3]

As to the ninth finding, once again the Resolution does not disclose how the Board determined the intention of the drafters. Since the Board inferred the drafters' purpose in enacting the

---

[3] Alternatively, it could be argued that the Board's use of the term "industrial" in the eighth finding reflects the Board's true understanding of the ordinance, which is also consistent with the court's conclusion.

ordinance, it was obligated to provide some analysis as to how it ascertained the legislative intent.

The court has already noted that the ninth finding does not comport with the Board counsel's ruling at the hearing that the preclusion of a reclamation plant was intended to apply to a *rubber* reclamation plant. In any event, the finding is contrary to what the phrase "rubber treatment or reclaiming plant" appears to mean on its face. If, in fact, all types of reclaiming plants were intended to be prohibited, why would the phrase "rubber treatment" be placed with the phrase "reclaiming plant"? The two uses would then be unrelated. A prohibition of a rubber treatment plant would, in all likelihood, be treated separately from a general prohibition of all types of reclaiming plants.

Finally, the tenth finding concerning the Kummings use is hardly dispositive. In the first instance, the Kummings decision is not binding on the Board in this case. If a previous Board had erred, the present Board is not obligated to repeat that error. The issue is whether the proposed use can stand alone on its own merits as a use similar to the other industrial uses permitted in the zone.

Thus, the court concludes that the proposed material recovery facility is a permitted use in the zone pursuant to Section 103(A)(8) because it is similar to and not inconsistent with the other uses expressly permitted in the zone. Therefore, plaintiff does not need a variance in order to construct it. Of course, major site plan approval and design waivers must be obtained if the ordinance so requires.