842 A.2d 266 (2004)
367 N.J. Super. 161
Roy A. DePETRO, Robert Lefelar, Irene Weinberg, Mary Tumminello, Plaintiffs-Appellants/Cross-Respondents,
v.
TOWNSHIP OF WAYNE PLANNING BOARD, Defendant-Respondent, and
Susa Partnership, L.P., a Limited Partnership Headquartered in Memphis, TN, Defendant-Respondent/Cross-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued telephonically December 3, 2003.
Decided February 25, 2004.
*268 Philip R. Glucksman, Morristown, argued the cause for appellants/cross-respondents (Mr. Glucksman, attorney and on the brief).
Matthew J. Cavaliere, Wayne, argued the cause for respondent Township of Wayne Planning Board (Cavaliere & Cavaliere, attorneys; Mr. Cavaliere, of counsel and on the brief).
A. Michael Rubin, Wayne, argued the cause for respondent/cross-appellant SUSA Partnership (Rubin & Connelly, attorneys; Mr. Rubin, on the brief).
Before Judges A.A. RODRIGUEZ, LEFELT and PAYNE.
*267 The opinion of the court was delivered by PAYNE, J.A.D.
Plaintiffs Roy A. DePetro, Robert Lefelar, Irene Weinberg, and Mary Tummienello, residents of the Township of Wayne and shareholders in an entity that competes with the self-storage facility business of defendant SUSA Partnership, appeal from orders of the trial court upholding, with modifications, a grant by the Township of Wayne Planning Board of preliminary and final site plan approval for the construction of a self-storage facility by SUSA on a lot on Route 23 South, zoned in relevant part for business uses. SUSA cross-appeals from the trial court's order, on motion for reconsideration, providing that the storage of commercial goods within the proposed self-storage facility is prohibited. We affirm in part and reverse in part.

I.
Defendant SUSA owns and operates self-storage facilities located throughout the country known as Storage USA. It is the contract purchaser of a five-acre lot, formerly occupied by Matzner Printing Company and now abandoned, that is located in the Township of Wayne on Route 23 South. The property is "bowling alley" in shape, and is split-zoned, with the front portion located in a "B" business zone, and the larger rear part located in an industrial park zone. Much of the property located *269 in the industrial park zone is protected wetlands, and the land in that zone lacks development potential.
Prior development plans by SUSA for the projected self-storage facility included construction of a detention basin in the industrial park zone, for which a "d" variance (N.J.S.A. 40:55D-70d) was required from the Township's Board of Adjustment. SUSA's application was thus filed with that Board, and while there, met objections from plaintiffs, owners of Access Self-Storage, a competing facility located within the Township in an industrial zone on Route 23, several miles to the south of SUSA's proposed facility. Thereafter, SUSA's plans were revised so that all development would take place in the business zone. After this change occurred, SUSA's application before the Board of Adjustment was withdrawn, and the matter was administratively transferred to the Planning Board for approval of the site plan and issuance of a "c" variance to permit the construction of the detention basin in a buffer zone. N.J.S.A. 40:55D-70c. No objection to the transfer was raised by plaintiffs.
At the time of the transfer, the Township's Director of Planning, John Szabo, viewed SUSA's proposed use as a customer service one that was among those permitted in the Township's business zone, and he so informed the Planning Board. The plaintiff objectors, through counsel, took the position that the use constituted a "commercial storage warehouse," a use that was specifically prohibited in the zone, and they sought over objection by SUSA to establish this fact through cross-examination of SUSA's witnesses and the testimony of their own planning expert, Michael Kauker. In a vote held on the permissibility of the use on the second of three nights of proceedings before it, the Planning Board voted seven to two that the construction of a self-storage facility constituted a permitted use within the Township's business zone.
During the course of extensive testimonial hearings before the Planning Board, various other objections were raised to the number of parking spaces at the facility, provision for adequate turning space for trucks and the location of the detention basin. By the conclusion of those hearings, those objections had been met by an increase in parking spaces, an agreement by SUSA to permit the Township to determine the maximum size of trucks entering the facility, and withdrawal of the request for a variance to permit construction of an above-ground detention basin. Thus, at the time that preliminary and final site plan approvals were granted, with certain conditions that are irrelevant here, the only remaining objection was that voiced by plaintiffs to the interpretation given by the Planning Board to the Township's zoning ordinance.
The Board described its determination that the use was permitted in the following language, set forth in its resolution approving SUSA's preliminary and final site plans:
The Board finds that the proposed use is not a warehouse in the technical and traditional sense of the word but rather, is a permitted commercial service whereby the public and businesses may rent space to store personal [e]ffects. According to Moskowitz and Lindbloom in their planning reference book entitled "The New Illustrated Book of Development Definitions" dated 1993, warehouses are defined as "A building used primarily for the storage of goods and materials" (see page 296). The Board notes that warehouses are most typically facilities used to store large quantities of finished goods and materials for sale and distribution to market *270 and typically entail heavy tractor-trailer traffic. The applicant's proposed use however, does not fall within the scope of this definition or within the Board's understanding of conventional warehouse operations as prohibited by code. The facility in question will not promote the distribution of goods that is typical of a traditional commercial warehouse operation. Based upon past experience with self-storage facilities elsewhere within the Township, the Board does not expect significant traffic to be generated by this use at this site. In fact, testimony presented by the applicant affirms that there will be very little if any tractor-trailer traffic or any other type of traffic emanating to and from the site. Consequently, any disturbance to the established businesses along the Route 23 corridor should be minimal if not negligible.
The Board further notes that the construction of the Township's Zoning Ordinance does not preclude self-storage facilities. Chapter 211-64 H permits any commercial activity unless otherwise specifically prohibited. The Board notes that item (4) of this sub[s]ection includes commercial storage warehouses however, it is further noted that this use is prohibited in context with several other uses including lumber yards, coal yards and building material storage yards. In this context, the Board finds that self-storage facilities do not share characteristics of these uses and consequently do not fall within the scope of this specific category that would preclude its consideration as a permitted use.
Additionally the Board found that the use was particularly appropriate to the lot in question, which was long and narrow and did not lend itself to retail development because of limited frontage on Route 23, and which had not proved attractive for office development. Further, the Board noted that the site had remained undeveloped during a period of sustained economic growth and had stood in its present abandoned condition for at least nine years. The proposed use, the Board found, would eliminate an obsolete industrial building and replace it with a use that was compatible with the commercial character of the highway location.
Thereafter, plaintiffs challenged the Board's action by means of an action in lieu of prerogative writs against SUSA and the Township. SUSA, in turn, argued as it had before the Board that plaintiffs lacked standing to object to its application. Following a hearing, the trial judge found standing on plaintiffs' part to exist, but sustained the Board's action in approving the use for personal, non-commercial storage as within its jurisdiction and both legally and factually supported. In doing so, the court found that the use proposed by SUSA constituted a warehouse, utilized for storage. However, the judge found that it differed from a prohibited commercial storage warehouse insofar as it was used for personal, not commercial purposes. The court stated:
In this case the Applicant recited that 65 percent of the building's subparts will be devoted to personal or non-commercial use. Clearly that is permitted under the Zoning Ordinance. There is no variance that is necessary because that would be non-commercial use.
The 35 percent that the Applicant termed commercial, and which the board did not delve into by analyzing, what do you mean by commercial, or what aspects of commercial? All we know is that tractor trailers were contemplated to some degree.
What's commercial? Does it involve a very generic use of the term commercial? Does it involve someone temporarily *271 storing stuff? ... Is it a place to store inventory for a business?
The term commercial couldn't reference the fact that you pay rent because the Applicant wouldn't use the term commercial 35 percent and 65 personal. It would make no sense. So the 35 percent use, if the Applicant still wants to use it, will require a use variance.
An order embodying the court's rulings was later clarified, on motion for reconsideration, to specifically permit construction of the facility for personal self-storage and the storage of business records. However, the order prohibited the use of the facility for "the storage of goods or merchandise used as a part of the regular business activities of an individual business entity."
On appeal from the court's orders, plaintiffs challenge the court's determination that a self-storage facility utilized for personal storage constitutes a permitted use in the "B" zone, arguing that any use of the warehouse facility for storage resulting in a profit constitutes a prohibited commercial use. Defendant SUSA has cross-appealed, and has argued that the court committed error in finding that plaintiffs had standing as objectors and in determining that use of SUSA's proposed self-storage facility (which includes units of no more than 300 square feet) by small business establishments for storage of commercial goods, transforms the building to that extent into a "warehouse" or "commercial storage warehouse."
Although SUSA's cross-appeal was untimely, we will consider it as if timely filed. R. 2:4-4(c).

II.
We find as an initial matter that plaintiffs' challenge to the interpretation of a zoning ordinance, raised within a proceeding in the Planning Board to approve a site plan, was statutorily unauthorized. The functions of a municipal Planning Board are enumerated and legislatively limited. See William M. Cox, New Jersey Zoning and Land Use Administration § 4-3 (2003). They do not include the resolution of a challenge to the interpretation of an ordinance such as that brought by plaintiffs. If plaintiffs sought a determination as to whether the use proposed by SUSA was permitted in a "B" zone, they should have filed a request for interpretation with the Board of Adjustment and established a record in that forum. See N.J.S.A. 40:55D-70b. See also, e.g., Colts Run Civic Assn. v. Colts Neck Tp. Zoning Bd. of Adjustment, 315 N.J.Super. 240, 245-46, 717 A.2d 456, 459 (Law Div. 1998). They did not do so. In that sense, we find that plaintiffs lacked standing to appear before the Planning Board, because the issues that plaintiffs sought to raise there were beyond that Board's statutory jurisdiction.
We do not conclude that as a result of plaintiffs' mistaken choice of forum, they have lost the opportunity to litigate the interpretational issue that they have raised. We have held in similar cases that interested parties do not need to exhaust their administrative remedies by perfecting an application before the Board of Adjustment before proceeding with an action in lieu of prerogative writs, such as that filed by plaintiffs here. See Supermarkets Oil Co., Inc. v. Zollinger, 126 N.J.Super. 505, 507, 315 A.2d 702, 703-04 (App.Div.1974); Colts Run, supra, 315 N.J.Super. at 246 n. 3, 717 A.2d at 459 n. 3. See also N.J.S.A. 40:55D-17h (in provision relating to appeals to the governing body, stating: "Nothing in this act shall be construed to restrict the right of any party to obtain a review by any court of competent jurisdiction, according to law.") It is in this context that we address SUSA's *272 argument that plaintiffs, whose interest in SUSA's plan arose out of their status as investors or partners in a competing facility, lacked standing under the New Jersey's Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -112, to object to SUSA's proposed development.
N.J.S.A. 40:55D-18 affords standing to "interested parties" to institute an appropriate action or proceeding to prevent unlawful construction. "Interested parties" are in turn defined by N.J.S.A. 40:55D-4 in relevant part as "any person, whether residing within or without the municipality, whose right to use, acquire, or enjoy property is or may be affected by any action taken under the [Municipal Land Use Law]." Our colleague Judge Havey, while a trial judge, held specifically that the definition of "interested party" under the MLUL governs standing in court as well as before the relevant municipal body. Aurentz v. Planning Bd. of Tp. of Little Egg Harbor, 171 N.J.Super. 135, 143, 408 A.2d 140, 143 (Law Div.1979). We concur.
In support of its position that standing is lacking, SUSA relies on a trial court decision in Paramus Multiplex Corp. v. Hartz Mountain Indus., Inc., 236 N.J.Super. 104, 564 A.2d 146 (Law Div.1987), and on the statement there that where the grant of a land-use application "impairs no present or future property right of [a person] other than to significantly increase competition... that increased competition does not affect a right to `use, acquire or enjoy property' and does not of itself confer standing." Id. at 110, 564 A.2d at 148. We reject SUSA's position.
In Paramus, the Planning Board of the Village of Ridgefield Park denied a request by RKO Century Warner Theaters Corp. and Paramus Multiplex Corp. to cross-examine witnesses and present testimony as interested parties opposing on competitive grounds an application by Hartz Mountain for site plan approval of a projected multiplex theater complex. On appeal from a grant of site plan approval, Judge Marguerite Simon affirmed the Planning Board's decision, finding that the objectors, which owned businesses located in surrounding municipalities, had demonstrated no impairment by virtue of the Board's decision of a present or future property right, but had only demonstrated a significant increase in competition. Paramus, supra, 236 N.J.Super. at 110, 564 A.2d 146. She continued:
The limit to the very liberal requirements for standing in zoning cases must be drawn at this point. The court is compelled to consider the definition [of standing] in its context as dealing with the use, enjoyment or acquisition of land as well as to consider public policy applications. Allowing the threat of increased competition to confer standing could open a new and inappropriate battleground for business competition: the planning and zoning boards of each municipality in the State. This battleground would unduly tax the resources of our municipalities as well as impair our commitment to a free enterprise system.
[Id. at 111, 564 A.2d at 149.]
What distinguishes Paramus from the present case is the fact that here the plaintiffs are challenging the authority of the Planning Board to grant site plan approval to SUSA's proposed development of the property for use as a self-storage facility on the ground that the use is prohibited by the governing zoning ordinance. Plaintiffs are not merely raising competitive objections to a proposed site plan. "Derived from the common law, actions in lieu of prerogative writs vest courts with jurisdiction to review the actions of municipal agencies to ensure that such agencies are *273 acting within their jurisdiction and "according to law."" Paruszewski v. Tp. of Elsinboro, 154 N.J. 45, 58, 711 A.2d 273, 279 (1998) (citing Wyzykowski v. Rizas, 132 N.J. 509, 522, 626 A.2d 406, 412 (1993)).
We recognize that the site at issue is small in relationship to the size of the zone, constituting approximately two acres located within the Township's "B" zone (the remainder being in a different zone). However, its size is not relevant to the issue of whether the Planning Board correctly exercised its powers in approving SUSA's proposed use as permitted in that zone. A substantial public interest exists in the preservation of the integrity of a zoning ordinance. See Zoning Bd. of Adj. of Green Brook v. Datchko, 142 N.J.Super. 501, 508, 362 A.2d 55, 59 (App.Div.1976).
We can find no grounds that would justify a bar, based on standing, to an effectuation of that interest by a competitor through a challenge to the exercise of powers by a Planning Board or Board of Adjustment on the ground that the Board's action was illegal or exceeded its powers. Indeed, a competitor may be particularly well equipped to frame the challenge and to provide the background that will illuminate its merits and faults. Cf. Paruszewski, supra, 154 N.J. at 56, 711 A.2d at 278-79 (observing that a municipality may be uniquely situated to establish the necessary record to support a challenge).
New Jersey's courts have long taken a liberal approach to standing in zoning cases and in that connection have broadly construed the MLUL's definition of "interested party." Id. at 53, 711 A.2d at 277; Home Builders League of S. Jersey, Inc. v. Township of Berlin, 81 N.J. 127, 131-35, 405 A.2d 381, 383-86 (1979). In that context, the Supreme Court has found a non-resident retailer of house trailers to have standing by virtue of its economic loss to challenge as unconstitutional or illegal a municipal ordinance prohibiting the parking of such homes for occupancy within municipal boundaries. Al Walker, Inc. v. Borough of Stanhope, 23 N.J. 657, 130 A.2d 372 (1957). It found that plaintiff's economic interest, which coincided with a strong public interest in the resolution of the issue raised, was sufficient to confer the requisite standing. Id. at 663-66, 130 A.2d at 375-77. See also Home Builders League, supra, 81 N.J. at 133-35, 405 A.2d at 384 (recognizing that a deprivation of commercial opportunity may present a sufficient stake to permit an association of builders and other allied enterprises, as well as independent builders, to challenge minimum floor area requirements for residential dwellings, imposed regardless of the number of residents).
As in Walker and Home Builders and the cases upon which those decisions rely, in the present case, plaintiffs are not simply interlopers, the potential economic impact upon them of SUSA's proposed development plan is not fanciful, and plaintiffs' proceeding effectively serves the public interest in determining whether the Township's zoning ordinance has been properly applied to permit the development in question. We thus find the requirements of standing to have been met in this case, and affirm the trial court's similar conclusion in this regard.[1]
*274 III.
We also affirm the court's conclusion that SUSA's proposed development constituted a permitted use under the Township's governing zoning ordinance, promulgated in 1949. As the trial court recognized, a commercial storage warehouse, prohibited in the Township's "B" zone, differs considerably from the self-storage facility that SUSA proposes to construct, a type of facility unknown when applicable zoning was enacted. Those differences are sufficient to avoid the zoning prohibition.
Commercial storage warehouses are utilized by manufacturers and distributors for bulk storage and transfer of finished and unfinished goods. They deal in gross, and their business requires a high volume of heavy truck traffic, operating at all hours, as well as multiple on-site employees engaged in necessary commercial storage and transfer tasks. Considerable noise and air pollution results from their operations. Self-storage facilities, like commercial warehouses, perform a storage function and they, like commercial warehouses, are constructed with the goal of providing a profit to their owners. However, the methods of storage in self-storage facilities (consisting of individual, small compartments), the purpose of storage (for individual business or personal use and not for bulk transfer), the clientele (consisting of private individuals and small businesses), and the modes of delivery (consisting primarily of cars and small trucks), differ. In this case, the uncontradicted testimony before the Planning Board established that less than one percent of the traffic at the facility would be comprised of tractor-trailers, and that those would be moving vans, operating during normal working hours. The facility would be staffed by a single individual, and the estimated number of visitors per hour would be, on an average, ten. Traffic and associated pollution would be negligible. The goods stored would likely be personal in nature, business records, or small amounts of retail inventory.
"As in the case of statutes, the purpose of construction of ordinances and municipal by-laws is the discovery and effectuation of the local legislative intent." Wright v. Vogt, 7 N.J. 1, 5, 80 A.2d 108, 110 (1951). When the governing ordinance does not take into account the evolution of consumer uses, "[w]e must adopt an interpretation `consonant with the probable intent of the draftsman "had he anticipated the situation at hand."'" White Castle v. Planning Bd. of the City of Clifton, 244 N.J.Super. 688, 691, 583 A.2d 406, 407 (App.Div.1990) (quoting Jersey City Chapter of Property Owner's Protective Ass'n v. City Council of Jersey City, 55 N.J. 86, 101, 259 A.2d 698, 706 (1969), quoting Dvorkin v. Dover Tp., 29 N.J. 303, 315, 148 A.2d 793, 799 (1959)), certif. denied, 126 N.J. 320, 598 A.2d 880 (1991). See also AMN, Inc. of N.J. v. South Brunswick Tp. Rent Leveling Bd., 93 N.J. 518, 525-26, 461 A.2d 1138, 1141-42 (1983). In doing *275 so, we give deference to a municipality's informed interpretation of its ordinances, while nevertheless construing the ordinance de novo. Wyzykowski v. Rizas, 254 N.J.Super. 28, 38, 603 A.2d 53, 59 (App. Div.1992), aff'd in part, rev'd in part, 132 N.J. 509, 626 A.2d 406 (1993).
The ordinance relevant to this case states that business districts are "primarily for the conduct of retail trade and general business." It permits certain specified uses in the Business Zone, and then permits "[a]ll other buildings and uses except the following, which are specifically prohibited." "Lumber and coal yards, building material storage yards and commercial storage warehouses" are among the prohibited uses.[2]
All of the uses grouped with commercial storage warehouses are accompanied by heavy tractor-trailer traffic, concomitant noise and air pollution, and twenty-four hour activity. Self-storage facilities, in contrast, do not attract heavy trucks, do not generate large amounts of traffic or pollution, and they operate only within normal business hours. Moreover, their clientele does not differ appreciably from that frequenting other enterprises located in the business zone. Thus, a grouping of self-storage facilities with lumber, coal and building material storage yards would lack any underlying logic and cannot reasonably have been intended by the drafters of the Township's zoning ordinance.
Further evidence of intent can be found in the Board's recognition that self-storage facilities have previously been treated as a permitted use in the Township's business zone. As the Supreme Court observed in an analogous context: "An agency's construction of a statute over a period of years without legislative interference will generally be granted great weight as evidence of its conformity with the legislative intent." Last Chance Development Partnership v. Kean, 119 N.J. 425, 434, 575 A.2d 427, 432 (1990). As the Planning Board found, self-storage facilities do not constitute warehouses in a technical sense, "but rather ... a permitted commercial service whereby the public and businesses may rent space to store personal [e]ffects." We find the Board's distinction to be compelling. The fact that self-storage facilities store goods and are operated for a profit, we find, is insufficient to transform them into commercial storage warehouses. Although, as the court found, self-storage facilities are a sub-set of "commercial" storage warehouses, their uses and clientele are so different as to render them unobjectionable under the Township's zoning ordinance as presently written.
As a final matter, we note that New Jersey's legislature has enacted specific legislation pertaining to self-service storage, entitled the Self-Service Storage Facility Act." N.J.S.A. 2A:44-187 to -192, and in it, the legislature has specifically distinguished between facilities subject to the Act and those warehouse activities subject to Article 7 of the Uniform Commercial Code. In this regard, self-service storage facility has been defined as:
any real property designed and used for the purpose of renting or leasing individual storage space to occupants who are *276 to have access for the purpose of storing and removing personal property ... A self-service storage facility is not a warehouse as used in chapter 7 of Title 12A of the New Jersey Statutes [the Uniform Commercial Code].
We thus affirm the court's determination that self-storage facilities constitute a permitted use in the Township's business zone.

IV.
As a final matter, we address SUSA's appeal from the court's ruling that the only permitted use of the proposed self-storage warehouse by commercial enterprises was for record storage. We reverse, finding no evidential basis in the record upon which a distinction between commercial and non-commercial uses could be drawn for zoning purposes.
We recognize that in the order entered after the hearing on plaintiff's motion for reconsideration, the court narrowed the definition of commercial use to "the storage of goods or merchandise used as a part of the regular business activities of an individual business entity." However, the judge did not provide any basis for his determination that such a use would have been prohibited by the Township if it had considered the matter at the time that the zoning ordinance was enacted, whereas use for personal storage would have been permitted by it. In testimony and other evidence introduced at the hearings before the Planning Board, no distinction was made between commercial and non-commercial uses when addressing potential concerns over traffic, parking, pollution, run-off, hours of operation or any other matter, except the presence of trucks. And the only testimony concerning trucks addressed their occasional use to deposit household goods at the facility pending a real estate sales closing on near-by property. No testimony suggested an increase in truck traffic at the result of incidental commercial use.
Moreover, we have been presented with no rational distinction between the storage of business records, which the court would permit, and the storage of small amounts of inventory, which the court would preclude. Finally, we note that the Planning Board appears to have found personal and business uses indistinguishable, since it encompassed both in its finding that they constituted part of "a permitted commercial service." We thus find that the court's order lacked evidential foundation, and therefore it was arbitrary and capricious. Close v. Kordulak Bros., 44 N.J. 589, 599, 210 A.2d 753, 758 (1965).
The trial court's order recognizing the operation of a self-storage facility in the business zone of the Township of Wayne as a permitted use is sustained. Its limitation of storage at the facility to non-commercial goods and business records is reversed.
NOTES
[1] Our decision is in accord with Booth v. Bd. of Adj. of the Tp. of Rockaway, 50 N.J. 302, 305, 234 A.2d 681, 682-83 (1967) (holding that citizen and taxpayer had standing to challenge establishment of a blacktop plant in a mining district because of the potential impact of the use on the integrity of the zoning plan); Funeral Home Mgmt. v. Basralian, 319 N.J.Super. 200, 215-16, 725 A.2d 64, 72 (App. Div.1999) (finding that a resident citizen and taxpayer operating a competing business within one mile of the site had standing to challenge approval of use variances); Village Supermarket v. Mayfair, 269 N.J.Super. 224, 233-35, 634 A.2d 1381, 1385-87 (Law Div. 1993) (effectively permitting competitor's participation in proceedings to obtain variances to permit construction of supermarket); Aurentz, supra, 171 N.J.Super. at 143-44, 408 A.2d at 144 (granting standing to property owners who did not live near challenged subdivision because of an overall concern for the Township's zoning scheme and finding "too narrow" an interpretation of "interested party" that would limit it to one whose property value or property use was directly affected). Compare, Car Spa, Inc. v. High Tech of S & C, Inc. 267 N.J.Super. 422, 423, 631 A.2d 992 (App.Div.1993), certif. denied, 135 N.J. 304, 639 A.2d 303 (1994) (finding a non-resident competitor without standing to challenge approval of variances).
[2] Other prohibited uses are independent manufacturing facilities; repair or machine shops; laundries and dry cleaning works employing more than four people; junk and automobile wrecking yards; the storage of crude oil and flammable liquids in more than specified amounts; amusement rides; bottling and ice works and facilities for the distribution of milk; livery stables; storage facilities for paper, iron, bottles, rags or junk; used car lots; trailer courts; drive-in restaurants or theaters; billboards; open parking lots; and airports or heliports.