NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3620-15T1

JOHN P. SHORT, JR.,
PATRICIA A. SHORT,
DONALD P. SALESKI, MARY
ANN SALESKI, JOHN M. LAVIN,
COURTNEY B. CARVER, JAMES
J. GARRITY and ROSEMARY
A. GARRITY,

 Plaintiffs-Appellants,

v.

BOROUGH COUNCIL OF BOROUGH
OF AVALON and BOROUGH OF AVALON
PLANNING/ZONING BOARD,

 Defendant-Respondent,

and

JOHN ADAMS,

 Defendant/Intervenor-
 Respondent.
______________________________________________

 Argued March 21, 2017 – Decided June 27, 2017

 Before Judges Messano and Guadagno.

 On appeal from the Superior Court of New
 Jersey, Law Division, Cape May County, Docket
 Nos. L-0123-13 and L-35-14.
 Robert A. Fineberg argued the cause for
 appellants.

 Dean R. Marcolongo argued the cause for
 respondent(Nathan Van Embden, attorney; Mr.
 Marcolongo, on the brief).

 Salvatore Perillo argued the cause for
 intervenor-respondent (Nehmad Perillo &
 Davis, P.C., attorneys; Mr. Perillo, on the
 brief).

PER CURIAM

 Defendant-intervenor John Adams acquired Lot 1.15, Block 83,

in the Borough of Avalon (Avalon) in 1985. Lot 1.15 fully conforms

to Avalon's zoning regulations and fronts on Fourth Avenue, a

public street. In 1989, Adams acquired a vacant lot, Lot 11,

Block 83 (Lot 11), which does not front on any dedicated public

street, is non-conforming in size and runs behind and perpendicular

to Lot 1.15. In 2002, Adams conveyed Lot 1.15 to plaintiffs John

P. Short, Jr., and Patricia A. Short, retaining ownership of Lot

11.

 In June 2013, Adams applied for, and in July 2013 obtained

from the zoning officer, a permit to construct a single-family

house on Lot 11. The zoning officer concluded variances were

unnecessary. Plaintiffs, along with Donald P. Saleski, Mary Ann

Saleski, John M. Lavin, Courtney B. Carver, James J. Garrity and

Rosemary A. Garrity, owners of properties in Block 83 that are

either contiguous to, or in close proximity to, Lot 11

 2 A-3620-15T1
(collectively, plaintiffs), appealed the decision to defendant

Borough of Avalon Planning/Zoning Board of Adjustment (the Board)

pursuant to N.J.S.A. 40:55D-70(a).

 The Board held a hearing, heard the testimony of the zoning

officer, Jeffrey Hesley,1 and considered the arguments of counsel.

The Board defeated a resolution stating Hesley erroneously issued

the permit by a vote of five to four.

 Plaintiffs filed a complaint in lieu of prerogative writs

against the Board, and the court permitted Short to intervene.

Judge Julio L. Mendez heard arguments and reserved decision. On

March 17, 2016, the judge filed an order denying plaintiffs'

challenge and affirming the Board's decision, accompanied by a

written statement of reasons, which we discuss in detail below.

This appeal followed.

 We apply "[t]he same standard of review" to the Board's

decision as does the trial court. N.Y. SMSA, L.P. v. Bd. of

Adjustment, 370 N.J. Super. 319, 331 (App. Div. 2004). A reviewing

court can "set aside" a municipal board's decision "when it is

'arbitrary, capricious or unreasonable.'" Cell S. of N.J., Inc.,

v. Zoning Bd. of Adjustment, 172 N.J. 75, 81 (2002) (quoting Medici

v. BPR Co., 107 N.J. 1, 15 (1987)).

1
 Hesley was also Avalon's Tax Assessor.

 3 A-3620-15T1
 "[Z]oning boards, 'because of their peculiar knowledge of

local conditions[,] must be allowed wide latitude in the exercise

of delegated discretion.'" Price v. Himeji, L.L.C., 214 N.J. 263,

284 (2013) (alteration in original) (quoting Kramer v. Bd. of

Adjustment, 45 N.J. 268, 296 (1965)). A zoning board's decision

"enjoy[s] a presumption of validity, and a court may not substitute

its judgment for that of the board unless there has been a clear

abuse of discretion." Ibid. (citing Cell S. of N.J., supra, 172

N.J. at 81).

 While we accord substantial deference to the factual findings

of the Board, its conclusions of law are subject to de novo review.

Wyzykowski v. Rizas, 132 N.J. 509, 518 (1993). "[A]lthough we

construe the governing ordinance de novo, we recognize the board's

knowledge of local circumstances and accord deference to its

interpretation." Grubbs v. Slothower, 389 N.J. Super. 377, 383

(App. Div. 2007).

 The issues before us, as they were before Judge Mendez,

involve interpretation of several provisions of Avalon's zoning

regulations, as well as a deed of easement from Avalon to Adams,

executed and recorded in 2013 (the 2013 easement). The easement

refers to a 1992 judgment, whereby the court granted "a right-of-

way easement" to the owners of Lot 12, which is contiguous to Lot

11 and one lot further behind Lot 1.15. The judgment-easement was

 4 A-3620-15T1
twenty feet wide and 190 feet in length, and extended from Lot 12

along Lot 11 to Fourth Avenue.

 The 2013 easement in Adams' favor was "co-extensive" with the

court-ordered easement and explicitly anticipated Adams'

construction of a "residence" on Lot 11. It imposed numerous

conditions on the grant and use of the easement area, and required

Adams to make various improvements, including paving the area.

Plaintiffs focus on one particular contingency in the deed of

easement:

 This Deed of Easement is contingent upon
 [Adams] obtaining all approvals from the State
 of New Jersey Department of Environmental
 Protection [DEP] as may be required by the
 Coastal Area Facilities Review Act ("CAFRA")
 and such other permits and approvals as
 required by Borough Ordinances within a
 reasonable period of time.

 [(Emphasis added).]

The parties executed the 2013 easement on August 12, 2013, several

weeks after Avalon received and approved Adams' permit

application.

 Avalon's zoning regulations included a provision that

authorized the issuance of construction permits for single-family

homes on undersized lots if "[t]he applicant own[ed] no contiguous

property"; the "lot [had] a minimum of forty . . . feet frontage";

and the "lot [was] in existence and appear[ed] on the Official Tax

 5 A-3620-15T1
Map of . . . Avalon prior to December 15, 1959." Borough of

Avalon, Ordinance § 27-7.3 (the grandfather ordinance).

 Plaintiffs contend that by its terms, the 2013 easement did

not become effective until Adams obtained all necessary "permits

and approvals," including a variance. In other words, they argue

Adams could not obviate the need for a variance by relying on the

2013 easement, which was itself conditional.

 Judge Mendez noted in his written opinion that plaintiffs

challenged Avalon's grant of the 2013 easement in a companion

lawsuit. The judge rejected that challenge and entered a separate

order and opinion on June 29, 2014, granting Avalon summary

judgment. That opinion clearly reflects that Avalon had adopted

an ordinance granting Adams an easement in January 2013, some six

months before he applied for the permit. In addition, the Board

was provided with proof that DEP had issued a CAFRA permit, one

of the conditions in the 2013 easement, in April 2013.

 In his testimony before the Board, Hesley acknowledged that

he had considered a request Adams made to construct a residence

on Lot 11 years earlier and was prepared to deny the permit unless

Adams obtained a variance. However, Hesley explained the reason

for his change of position was the 2013 easement, whereby Avalon

expressly granted Adams access to Lot 11 from Fourth Avenue.

Hesley confirmed that the deed of easement was not executed until

 6 A-3620-15T1
August, but the governing body had approved the easement, with

certain conditions, months earlier.

 We conclude that a fair reading of the record demonstrates

Avalon had passed an ordinance granting Adams access to Lot 11

months before he applied for the permit, and that Adams had

otherwise complied with the conditions of the 2013 easement that

required he obtain governmental approvals. Plaintiffs' challenge

to the substance of the Board's decision, i.e., that Lot 11

satisfied the conditions for non-conforming lots in Avalon's

grandfather ordinance, requires further discussion.

 Judge Mendez summarized the extent of Lot 11's non-

conformity, specifically: it was 5600 square feet, short of the

6000-square-foot minimum requirement of the zoning regulations;

and it had forty feet of frontage on the easement, the minimum

required for an approved "grandfathered" lot, but less than the

minimum sixty feet required by Avalon's regulations. We agree

with plaintiffs that Adams bore the burden of demonstrating Lot

11 was a pre-existing, non-conforming lot in order to reap the

benefits of the grandfather ordinance. See, e.g., S & S Auto

Sales, Inc. v. Zoning Bd. of Adjustment, 373 N.J. Super. 603, 613

(App. Div. 2004) ("It is the burden of the property owner to

establish the existence of a nonconforming use as of the

 7 A-3620-15T1
commencement of the changed zoning regulation and its continuation

afterward.").

 Plaintiffs argue that Adams was not entitled to relief under

the grandfather provisions because he created his own "hardship."

Although Adams did not presently own a lot that was contiguous to

Lot 11, plaintiffs contend he previously owned lot 1.15, a fully

conforming lot, which was contiguous.

 Judge Mendez correctly rejected this contention based upon

Jock v. Zoning Board of Adjustment, 184 N.J. 562 (2005). There,

the Court explained, "merger takes place as a matter of law where

adjacent substandard lots come into common legal title." Id. at

581 (emphasis added). Here, although both lots were in common

legal title, Lot 1.15 was never substandard. As a result, the

lots never merged.

 Adams could not avail himself of the grandfather provisions

of the ordinance if he created the hardship himself, i.e., caused

Lot 11 to become non-conforming. However, "a self-created hardship

requires an affirmative action by the landowner or a predecessor

in title that brings an otherwise conforming property into non-

conformity." Id. at 591. Adams took no affirmative action to

create a non-conforming lot; Lot 11 was always non-conforming.

 Plaintiffs argue that Lot 11 did not have forty feet of

frontage required by the grandfather ordinance. Judge Mendez

 8 A-3620-15T1
rejected plaintiffs' contention, noting the Municipal Land Use Law

(MLUL), N.J.S.A. 40:55D-1 to -163, broadly defined "street," see

N.J.S.A. 40:55D-7, and Avalon's zoning regulations defined "lot

frontage" as "[t]he horizontal distance across the lot measured

along the front lot line." Ordinance, supra, § 27-3(c). In turn,

the regulations defined the front lot line as "[t]he street line

on which the lot fronts or abuts." Ibid. Judge Mendez rejected

plaintiffs' various arguments regarding this portion of the

grandfather ordinance, as do we. They lack sufficient merit to

warrant discussion. R. 2:11-3(e)(1)(E).

 Lastly, plaintiffs argue the historical record clearly

demonstrates Lot 11 never existed and appeared as a forty by one-

hundred-and-forty foot lot on Avalon's tax maps prior to 1959. It

was error, therefore, to conclude Adams was entitled to the

protections of the grandfather ordinance.

 However, Judge Mendez relied upon the uncontested testimony

of Hensley, who was intimately familiar with the historical record.

Hensley testified that Lot 11 was comprised of three separately

referenced tax lots, which numbers were changed when Avalon

renumbered its tax map. Nevertheless, ever since 1930, the deeds

in the chain of title that led to Adams all conveyed the property

using the same metes and bounds description. Hensley testified

that Avalon historically taxed Lot 11 as one lot.

 9 A-3620-15T1
 The grandfather ordinance is entitled to a common-sense

interpretation of its plain language in order to effectuate the

intent of Avalon's governing body. DePetro v. Twp. of Wayne

Planning Bd., 367 N.J. Super. 161, 174 (App. Div.), certif. denied,

181 N.J. 544 (2004). We agree that given the historical

recognition of Lot 11 as a single lot since 1930, the Board

appropriately concluded it was a lot that existed prior to 1959

and otherwise met the requirements of the grandfather ordinance.

 Affirmed.

 10 A-3620-15T1