**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1517-22
            A-1520-22

MRP INDUSTRIAL NE, LLC,
COLBY M. PEW, TRUSTEE OF
THE REMAINDER TRUST UWO
BARBARA E. PEW, JOHN S.
PEW, III and HAROLD M. PEW,
COEXECUTORS OF THE ESTATE
OF JOHN PEW, JR, and
CO-TRUSTEES OF THE JOHN
PEW, JR., REVOCABLE TRUST
DATED FEBRUARY 1, 2013,

 Plaintiffs-Appellants,

v.

THE LAND DEVELOPMENT
BOARD OF THE TOWNSHIP
OF WESTAMPTON,

 Defendant-Respondent.

_____

Argued (A-1517-22) and Submitted (A-1520-22)
November 14, 2024 – Decided November 25, 2024

Before Judges Mawla, Natali, and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-1240-22.

Michael F. Floyd argued the cause for appellant MRP Industrial NE, LLC in A-1517-22 (Archer & Greiner, PC, attorneys; Jamie A. Slimm, on the briefs).

David C. Frank, attorney for appellants Colby M. Pew, Trustee of the Remainder Trust Uwo Barbara E. Pew; John S. Pew, III and Harold M. Pew, Co-Executors of the Estate of John Pew, Jr, and Co-Trustees of the John Pew, Jr., Revocable Trust dated February 1, 2013 in A-1520-22.

Wade L. Dickey argued the cause for respondent The Land Development Board of the Township of Westampton (Florio Perrucci Steinhardt Cappelli & Tipton LLC, attorneys; Stephen J. Boraske, on the briefs).

PER CURIAM

In A-1517-22, plaintiff MRP Industrial NE, LLC (MRP), appeals from the trial court's December 8, 2022 order denying its complaint in lieu of prerogative writs challenging a decision by the planning board of defendant Land Development Board of the Township of Westampton, which declined jurisdiction of MRP's application for site plan approval, in favor of the township's zoning board of adjustment. In A-1520-22, plaintiffs Colby M. Pew, Trustee of the Remainder Trust UWO Barbara E. Pew; John S. Pew, III and Harold M. Pew, co-executors of the Estate of John Pew, Jr.; and co-trustees of

2

the John Pew, Jr., Revocable Trust Dated February 1, 2013 (collectively "the Pew Family"), also challenge the December 8 order. We consolidate the appeals and reverse and remand for the reasons expressed in this opinion.

MRP contracted to purchase industrially zoned farmland from the Pew Family in Westampton Township. It applied for two "c" variances for height and building orientation to construct two industrial warehouse buildings and sought site improvements pursuant to Westampton Ordinance § 250-20A. The land MRP proposed to develop is a 44.2-acre parcel located in the township's I-Industrial Zone District. Prior to MRP's application, the property had two approved principal uses: "agriculture and a cellular communications tower . . . ." The cell tower located on the property occupies approximately 900 square feet and the remaining 1,925,535 square feet was agricultural land.

Prior to the cell tower's construction in 1997, the necessary variances were approved by the township, pursuant to N.J.S.A. 40:55D-76(2)(b). MRP's application proposed no change to the area dedicated to the cell tower, or access thereto. The only changes were to the agricultural area, on which MRP proposed to construct the warehouses. MRP sought bulk or "c" variances for height and orientation of the buildings.

The planning board held four public hearings on MRP's application in August, September, and December 2021, and April 2022. The record shows MRP worked with planning board professionals pre- and post-application to address any concerns that were raised, which were predominately regarding building orientation, compliance with the site plan ordinance, and traffic issues. The planning board considered technical review letters from the board's planner and engineer, which stated the proposed warehouse use was permitted as of right by township ordinance.

The issue of jurisdiction was never raised by the planning board or its professionals. It only became an issue during the December hearing when an objector claimed MRP needed a "d" variance to switch the second principal use for the property from agricultural to warehouses. The objector argued this was beyond the planning board's statutory abilities and jurisdiction because it could only grant "c" variances.

The planning board received at least five interpretations of the relevant ordinance, § 250-4, including separate interpretations from MRP and the Pew Family, debating whether a variance was needed and whether MRP's application conformed with the ordinance. Members of the public in opposition argued the planning board should construe the ordinance as requiring MRP to obtain a "d"

4

variance because the proposed uses were "entirely separate" and outside of the planning board's jurisdiction. They asserted the ordinance should be read to only permit "[m]ultiple uses" "within a building" as defined by § 250-4, not a property. Regardless of the necessity for a use variance, they averred MRP's application violated the stormwater management requirement of § 250-4.

The board solicitor disagreed with the public objector's position and found MRP's application did not violate the stormwater management requirement. However, the solicitor opined § 250-4 should be construed to refer to the property as whole, not a single building, but that MRP's application still was not a single scheme and required a "d" variance prior to approval.

The board planner advised the application required a "d" variance under the ordinance. Another application was also required to amend the existing variance from 1997 because pursuant to ordinance § 250.22I, it was not permissible to exchange one permitted use for another.[1]

After reviewing the submitted materials and testimony, the planning board denied MRP's application by unanimous vote, holding that "it did not have

---

[1] In relevant part, § 250.22I reads as follows: "Multiple uses for commercial and industrial sites . . . . [I]ndustrial complexes receiving site plan approval where all buildings are designed as a united and comprehensive plan in accordance with the applicable zoning district standards may have more than one building on a lot and more than one use within a building."

A-1517-22

jurisdiction acting in its capacity as a planning board." It issued a resolution memorializing its decision. MRP and the Pew Family jointly filed a complaint in lieu of prerogative writs, challenging the resolution.

On December 8, 2022, the trial court issued an order declaring the resolution null and void, and remanded MRP's application to the zoning board. It declined to rule whether a variance was necessary before site plan approval, because the resolution was void due to the fact the planning board lacked the jurisdiction to decide MRP's application. The court held the zoning board had "the exclusive power to determine permitted uses of land" pursuant to the Municipal Land Use Law (MLUL). It found the planning "board's authority in reviewing an application for site plan approval is limited to determining whether the development plan conforms with [the] zoning ordinance and the applicable provisions of the site plan ordinance." Thus, "any interpretation of a zoning ordinance should be before the zoning board alone." Although the planning board recognized it lacked jurisdiction, the court noted it "then substantively denied the site plan in the resolution on the merits, which was an improper use of its authority." On remand, the court directed the zoning board to determine "whether a use variance is needed by interpreting the relative ordinances . . . and . . . whether the proposal is worthy of said variance."

6

The trial court also found that, even if the planning board had jurisdiction, the factual findings in its resolution were inadequate because it contained "conclusory statements and statutory language, but . . . [did] not sufficiently apply[] the facts to the law." The court concluded it could not analyze the remaining issues without a proper record and directed the zoning board to conduct such an analysis.

The court later amplified its initial ruling. It underscored that even though the MLUL gave the planning and zoning boards "ancillary powers . . . [o]nly boards of adjustment have the statutory authority to hear ["d"] variance applications . . . . The ancillary power of the [zoning board] thus arises only in those cases where a ["d"] variance application is, potentially, before the [zoning] board." In these circumstances, the zoning board has "exclusive power to approve the site plan or subdivision application, which is connected with, or ancillary to, the ["d"] variance."

## I.

A court reviewing the decision of a municipal land use board must accord deference to the board's determination absent a finding that it acted in an arbitrary, capricious, or unreasonable manner. Price v. Himeji, LLC, 214 N.J. 263, 284 (2013). "[B]ecause of their peculiar knowledge of local conditions[,

land use boards] must be allowed wide latitude in the exercise of delegated discretion." Ibid. (quoting Kramer v. Bd. of Adjustment, 45 N.J. 268, 296 (1965)). A "board's decisions enjoy a presumption of validity, and a court may not substitute its judgment for that of the board unless there has been a clear abuse of discretion." Ibid. (citing Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment, 172 N.J. 75, 81 (2002)). We apply the same deferential standard of review on appeal and will only reverse if the board's decision was arbitrary, capricious, or unreasonable. Ibid.

That said, determinations on questions of law in land use matters do not warrant equivalent deference and are reviewed de novo. Bubis v. Kassin, 184 N.J. 612, 627 (2005). The de novo standard of review of such legal decisions continues on appeal after a trial court has made its own ruling. See James R. Ientile, Inc. v. Zoning Bd. of Adjustment, 271 N.J. Super. 326, 329 (App. Div. 1994) (citing Cherney v. Matawan Borough Zoning Bd. of Adjustment, 221 N.J. Super. 141, 144-45 (App. Div. 1987)).

II.

MRP argues the trial court erred in determining a zoning board interpretation was necessary regarding whether a variance was required because ordinance § 250-4 permits mixed uses of more than one principal commercial or

industrial zone.  It points out the property has been an approved mixed-use zone since 1997 with the addition of the cell tower, and the warehouses would not be an additional use to the two preestablished principal uses, but would be in place of the agricultural use, thereby maintaining only two principal uses.  Moreover, neither the planning board nor its professionals questioned the cohesiveness of the site and the planning board's resolution was silent on the issue.  MRP asserts construction of the warehouses is "by-right permitted" under ordinance § 250-20(A)(3), which governs industrial zoned properties.  Because the application contained all the necessary information, the planning board should have considered and granted it.

MRP claims its application required no land or utility easements.  In fact, it met the requirement for shared access, because the cell tower tenant's lease protects their continued access rights, and the current form of access to the cell tower is a "shared driveway and maneuver area[,]" which would remain in place following the construction of the proposed warehouses.  Therefore, MRP's proposed plan "unifies the uses' access" in accordance with the access requirements.

The Pew Family joins in MRP's by-right argument.  It further asserts the planning board was required to approve the application because there were no

deviations from the ordinance standards, which would have deprived the planning board of jurisdiction.

The Pew Family contends the planning board's conclusion that a variance was required was arbitrary, capricious, and unreasonable because the planning board made inadequate factual findings and relied on the wrong ordinance. The planning board relied on ordinance § 250-22(I), which governs multiple uses for commercial and industrial sites and permits more than one building on a lot and more than one use within a building "where all buildings are designed as a united and comprehensive plan in accordance with the applicable zoning district standards . . . ." However, the Pew Family argues the ordinance has no criteria to determine whether a proposal is a united and comprehensive plan. If the planning board had instead applied § 250-4(B), which defines what a principal use is, it would have found MRP's application laid out a comprehensive single site plan because it addressed cross easements, shared stormwater management, and shared driveways—none of which require a use variance.

According to the Pew Family, Westampton zoning ordinances are unique because they do not prohibit multiple principal uses on a single industrial lot, whereas the township has such ordinances for residential lots. Regardless, MRP's plan does not affect the existing utilities to the cell tower, nor will the

cell tower's utilities serve the proposed warehouses. The cell tower has no stormwater facilities and MRP's plan does not propose the addition of such facilities. The plan meets the shared access requirement and does not require easements.

The Pew Family argues the trial court overlooked these salient facts because, in focusing on the jurisdictional issue, it mistakenly believed Westampton operated both a planning board and a zoning board. However, Westampton only has one board that had the ability to exercise the powers of a zoning board. Even if the planning board lacked jurisdiction, it should have resulted in a dismissal of MRP's application rather than a denial. The Pew Family urges us to reverse because the trial court erred as a matter of law.

III.

Westampton operates a joint land use board comprised of Class I, II, III, and IV members organized pursuant to N.J.S.A. 40:55D-69. As a result, the joint land use board exercises the powers of a planning board and a zoning board, but Class I and III members may not participate in applications involving a "d" variance as a matter of law. N.J.S.A. 40:55D-25(c).

Pursuant to the MLUL, only the zoning board can "[h]ear and decide requests for interpretation of the zoning map or ordinance or for decision upon

11

other special questions upon which such board is authorized to pass by any zoning or official map ordinance, in accordance with this act." N.J.S.A. 40:55D-70(b). "[T]he power to make the initial determination on jurisdiction lies exclusively with the Board of Adjustment pursuant either to its authority to review zoning determinations made by administrative officers pursuant to [N.J.S.A.] 40:55D-70a or to interpret the zoning ordinance pursuant to [N.J.S.A.] 40:55D-70b." Cox et al., New Jersey Zoning & Land Use Administration, § 16-4.1, at 223 (2024). We have echoed this basic principle in holding that when an objector disagrees with the interpretation made by a planning board in taking jurisdiction, the appropriate municipal forum is the zoning board. DePetro v. Twp. of Wayne Plan. Bd., 367 N.J. Super. 161, 169 (App. Div. 2004).

The central dispute in this matter regarded the interpretation of ordinance § 250-4, which defines a "principal use" as:

> A use which is the main or principal use of the lot; it is the lot's first, chief or most important use. While commercial or industrial developments . . . may have more than one principal building per lot, they may have only one principal use; however, mixed uses of more than one principal commercial or industrial use may be located on one lot if the [p]lanning [b]oard finds that the uses are part of a single site plan, with cross easements for utilities and stormwater management,

and access, ingress and egress utilizing shared, common driveways.

The property in question is an industrially zoned lot. Township ordinance § 250-4 places the decision-making process of, whether more than one use within an industrial zone is part of a single site plan, squarely in the hands of the planning board. Jurisdiction is plainly set forth in the ordinance and did not require a legal interpretation. For these reasons, we conclude the planning board erred as a matter of law when it declined to hear MRP's application on jurisdictional grounds. The trial court compounded the error when it concluded the planning board could not hear the application, and that jurisdiction belonged to the zoning board.

Substantively, township ordinance § 250-20(A)(3) lists distribution centers and warehouses as a permitted use in the industrial zone. Therefore, no use variance was required where the cell tower was already a permitted use, and the warehouses were replacing the agricultural use by right. For these reasons as well, the planning board had jurisdiction to hear MRP's application.

Finally, ordinance § 250-4 permits multiple commercial or industrial uses on an industrial zoned lot provided the planning board determines the "uses are part of a single site plan[.]" The MLUL states a site plan

means a development plan of one or more lots on which is shown (1) the existing and proposed conditions of the lot, including but not necessarily limited to topography, vegetation, drainage, flood plains, marshes and waterways, (2) the location of all existing and proposed buildings, drives, parking spaces, walkways, means of ingress and egress, drainage facilities, utility services, landscaping, structures and signs, lighting, screening devices, and (3) any other information that may be reasonably required in order to make an informed determination pursuant to an ordinance requiring review and approval of site plans by the planning board adopted pursuant to article 6 [N.J.S.A. 40:55D-37 et seq.] of this act.

[N.J.S.A. 40:55D-7.]

There is no credible dispute MRP's application provided all the information required by N.J.S.A. 40:55D-7 to establish a single site plan. The planning board should have decided the issue.

This matter did not belong before the zoning board. We reverse and remand to the planning board to consider MRP's application on the merits.

Reversed and remanded in A-1517-22 and A-1520-22. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION